**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| MICHAEL WOOD, | : | Case No. 2:24-cv-165 |
| | : | |
| Plaintiff, | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| ANNETTE CHAMBERS SMITH, *et. al.*, | : | |
| | : | |
| Defendants. | : | |

---

## ORDER

Plaintiff Michael Wood, an inmate at London Correctional Institution ("LoCI") who is proceeding without the assistance of counsel, filed this civil rights action. This matter is before the undersigned Magistrate Judge to rule on Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* ("IFP Motion," ECF No. 4) and Motion to Consolidate Multiple Causes of Action ("Motion to Consolidate," ECF No. 6).

For the reasons set forth below, the Court **GRANTS** the IFP Motion and **DENIES** the Motion to Consolidate. Furthermore, because Plaintiff's pleadings assert multiple claims against different Defendants based upon unrelated incidents involving different individuals, the Court will provide Plaintiff an opportunity to file an amended complaint that complies with the Federal Rules of Civil Procedure. If Plaintiff chooses not to file an amended complaint **within thirty (30) days of the date of this Order**, then the Court will determine which of his claims should be severed, or which Defendants should be dropped, from this lawsuit pursuant to Federal Rule of Civil Procedure 21.

1

I. **MOTION TO PROCEED IN FORMA PAUPERIS**

Plaintiff supported his IFP Motion with an affidavit of indigency and trust account statement from the Ohio Department of Rehabilitation and Corrections ("ODRC"). Plaintiff's application and trust fund account statement show that he has insufficient funds in his prison account to pay the full filing fee. After consideration by this Court of Plaintiff's affidavit of indigence only, without regard to the merits of this case, the IFP Motion (ECF No. 4) is hereby **GRANTED** pursuant to 28 U.S.C. § 1915(a).

In accordance with section 804(a)(3) of the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(b)(1), Plaintiff must pay an initial partial filing fee of 20 percent of the greater of the average monthly deposits to his prison account or the average monthly balance in his account for the six-month period immediately preceding the filing of the Complaint. After payment of the initial partial filing fee, Plaintiff is further required to make monthly payments of 20 percent of the preceding month's income credited to his prison account until he pays the full amount of the filing fee. 28 U.S.C. § 1915(b)(2).

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust fund account at the institution where he now resides is directed to calculate, as an initial partial payment, twenty percent (20%) of the greater of:

(a) the average monthly deposits to the inmate trust account; or

(b) the average monthly balance in the inmate trust account, for the six (6) months immediately preceding January 30, 2024.

The custodian is **ORDERED** to complete and to submit to the Clerk of Court in Columbus, Ohio, the attached form showing his calculation of the initial partial filing

2

fee. The custodian is further **ORDERED** to forward from Plaintiff's prison account to the Clerk of Court located in Columbus, Ohio, the initial partial filing fee, as funds become available in Plaintiff's account until the initial filing fee is paid. Even if the account is under ten dollars ($10.00), the custodian must still forward payments to the Clerk of Court to pay the initial filing fee.

After full payment of the initial partial filing fee, the custodian shall forward to the Clerk of Court located in Columbus, Ohio, monthly payments of twenty percent (20%) of Plaintiff's preceding monthly income credited to his prison account, but only when the amount in the account exceeds ten dollars ($10.00), until the full fee of three hundred and fifty dollars ($350.00) has been paid to the Clerk of Court. 28 U.S.C. § 1915(b)(2).

*The prisoner's name and case number <u>must</u> be noted on each remittance.*

Checks are to be made payable to:  **Clerk, U.S. District Court**.

Checks are to be sent to:

**Prisoner Accounts Receivable**
121 U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

The Clerk of Court is **DIRECTED** to send a copy of this Order to the institutional cashier.

## II.     FACTUAL ALLEGATIONS

Before addressing the Motion to Consolidate, it is first necessary to identify the Defendants and describe the factual allegations and various causes of action asserted in Plaintiff's pleadings.

### A.     Overview of Pleadings and Defendants

Plaintiff filed a sixty-page civil rights Complaint on January 16, 2024. ECF No. 1. In the caption of the Complaint, Plaintiff named the Ohio Department of Rehabilitation and Corrections ("ODRC") and Annette Chambers-Smith ("Chambers-Smith") as Defendants. He also named Deanna Williamson ("Williamson"), Elvan Shaw ("Shaw"), Freda Adu ("Adu"), Thaddeus Huffman ("Huffman"), Mark McCoy ("McCoy"), Elayna Moler ("Moler"), Jonathan Jordan ("Jordan"), Steven Gause ("Gause"), Teron Hood ("Hood"), Paul Page ("Page"), and Antonio Lee ("Lee") as Defendants, and noted that they are being sued in their official and individual capacities.

On March 24, 2024, Plaintiff filed a three-page Supplemental Complaint ("First Supplemental Complaint," ECF No. 5). In the First Supplemental Complaint, Plaintiff sued Jesse White ("White") in his individual and official capacities.

On May 8, 2024, Plaintiff filed a thirty-one-page Supplemental Complaint ("Second Supplemental Complaint," ECF No. 7). In the Second Supplemental Complaint, Plaintiff sued Unknown Saad ("Saad"), Unknown Venable ("Venable"), and Unknown Collins ("Collins") in their individual and official capacities. He also asserted additional claims against several existing Defendants.

4

### B. First Cause Of Action

On November 8, 2022, while he was housed as an inmate at LoCI, Plaintiff voluntarily attended an Alcoholics Anonymous meeting in the Recovery Services building. ECF No. 1 at PageID 3. Recovery service inmate workers instructed attendees to sign the appropriate sign-in sheet to ensure they received credit for attending. *Id*. One worker instructed Plaintiff to sign the sheet stating "General Population" at the top, due to his lack of affiliation with any group listed on the sign-in sheets. *Id.* at PageID 3-4. Plaintiff alleges that there was no indication that he agreed to any terms or conditions merely by signing the attendance list. *Id.*

After Plaintiff signed in, he spoke to an inmate who wanted to file a judicial release motion. ECF No. 1 at PageID 4. Plaintiff told the inmate that he had information and forms for filing the motion in his cell, and that he would get them and bring them back before the meeting started. *Id.* at PageID 4-5. As Plaintiff moved towards the exit, Defendant Williamson, a Recovery Services counselor, blocked his path and told Plaintiff that he could not leave because he already signed in. *Id.* at PageID 5. Plaintiff calmly told Williamson that he was not required to be at the meeting and that he would cross his name off the list and leave. *Id.* Although Williamson initially disagreed in a frantic and loud manner, she eventually told Plaintiff that he could leave if he removed his name from the sign-in sheet. *Id.* at PageID 5-6.

Plaintiff returned to the sign-in area and got in line so that he could remove his name. ECF No. 1 at PageID 6. While he waited in line, Plaintiff turned to Williamson and calmly said: "You're being ridiculous." Williamson approached Plaintiff in an aggressive

and challenging manner and demanded to see Plaintiff's identification. *Id.* at PageID 6-7. Plaintiff told her that he did not have his identification and left the building. *Id.*

Several hours later, Williamson allegedly retaliated against Plaintiff by issuing a false conduct report that accused Plaintiff of violating institutional rules (namely, refusing to carry out work assignments and being disrespectful to an officer/staff member). ECF No. 1 at PageID 8 (citing ECF No. 1-1 at PageID 61). Plaintiff alleges that Williamson's report misconstrued the sequence of events and was false because he was not assigned or otherwise required to be at the meeting, he did not break any rules, and he has a First Amendment right to say what he feels to Williamson. *Id.* at PageID 8.

Plaintiff was found guilty of the violations described in the conduct report. ECF No. 1 at PageID 13. He was punished with a commissary restriction and a 30-day restriction on receiving packages. *Id.*

Plaintiff alleges that Williamson's conduct report violates Ohio Administrative Code Rule 5120-9-06 (inmate rules of conduct), Ohio Administrative Code Rule 5120-9-31(A) (access to inmate grievance procedure), Ohio Revised Code Section 2913.31(A)(2) (forgery), Ohio Revised Code Section 2921.12(A)(2) (tampering with evidence), Standards of Employee Conduct, 31-SEM-02 (prohibiting abusive behavior by employees), LoCI Offender Handbook, page 64 (access to inmate grievance procedure), and the First and Fourteenth Amendments to the United States Constitution (free expression, petition for redress of grievances, and retaliation). ECF No. 1 at PageID 8-14. Plaintiff also asserts a claim for malicious prosecution. *Id.* He seeks compensatory and punitive damages. *Id.*

6

### C.    Second Cause Of Action

On October 28, 2022, Sergeant LeVan told Plaintiff that he had been reclassified as a porter in a C-2 dorm. ECF No. 1 at PageID 15. Plaintiff did not receive a work assignment and was told that he would be given a work assignment at a later time. *Id*.

On December 18, 2022, prison guard Adu came to Plaintiff's room and asked him why he did not show up for his cleaning job. ECF No. 1 at PageID 15. Plaintiff stated that he was not assigned to a cleaning job and did not know what she was talking about. *Id*. Adu accused Plaintiff of lying and said she would "look into" the issue. *Id*.

Around 4:30 p.m., Plaintiff asked Adu about the work assignment. ECF No. 1 at PageID 15. Adu pointed to a sheet in a binder that indicated Plaintiff was assigned to weekend cleaning duty in the bathrooms at 3:30 p.m. and 8:30 p.m. on Saturdays and Sundays. *Id*. at PageID 16. Plaintiff reiterated that he had not been told of the assignment, and asked what he was supposed to do going forward. Adu instructed him to check in at the work desk at 3:30 p.m. and 8:30 p.m. on Saturdays and Sundays and then clean the bathrooms. *Id*. Adu did not instruct Plaintiff to clean the bathrooms right away. *Id*. Because it was already past 3:30 p.m., Plaintiff believed that he was not required to begin his cleaning assignment until 8:30 p.m. that evening. *Id*.

Plaintiff believed that Sergeant King (who is not a defendant) failed to inform him of the work assignment, either because of neglect or to retaliate against Plaintiff for filing an informal grievance against King. ECF No. 1 at PageID 16-17. Plaintiff also believed that he may have been "set up" to have an informal complaint filed against him for failure to perform. *Id*. He returned to the desk to inform Adu of his theories. *Id*. at PageID 17.

7

Plaintiff also informed Adu of other instances of staff misconduct, all while speaking "calmly and accurately." *Id.* After he finished speaking, Adu said she needed to speak to a supervisor and left. *Id.* Plaintiff returned to his room to gather his evidence for what he believed was to be a presentation. *Id.* But before he could return to the desk, prison guard Huffman placed Plaintiff in handcuffs and took him to the captain's office. *Id.*

When Plaintiff arrived in the captain's office, three other people were present: Huffman, Captain Shaw, and a male who Plaintiff believed to be Lieutenant Caleb-Moli. ECF No. 1 at PageID 18. Shaw asked Plaintiff questions; however, Plaintiff ignored Shaw's questions, spoke "over" Shaw, and told Shaw that he was not informed of his work assignment. *Id.* Shaw slammed his fists on the desk and yelled at Plaintiff. *Id.* Shaw then stopped yelling, apologized, and asked Plaintiff why he did not report for work, to which Plaintiff responded he was not informed of the assignment until that day. *Id.* Shaw instructed Huffman to take the handcuffs off Plaintiff. *Id.* While Huffman was removing the handcuffs, Plaintiff told Shaw that he was going to file a federal lawsuit and inform Annette Chambers-Smith, the Correctional Institutional Inspection Committee and the Ohio Inspector General about the "abusive misconduct" taking place at LoCI. *Id.* at PageID 18-19. In response, Shaw smiled and said: "You're going to the hole for a couple days." *Id.* at PageID 19-20. Shaw called Adu, asked her if Plaintiff did "the job," and told her to "write the ticket." *Id.* at PageID 20. Shaw then instructed Huffman to take Plaintiff to transportation. *Id.*

Plaintiff was placed in restrictive housing ("TPU") and strip searched twice as part of the transfer process. ECF No. 1 at PageID 20. While he was in TPU, prison guard

8

Edwards told Plaintiff that he had been placed in TPU for threatening to file a lawsuit. *Id.* at PageID 23.

The following morning, Sergeant McCoy gave Plaintiff a copy of a misconduct report allegedly written by Lieutenant Beckwith, although Plaintiff believed that the report was actually written by Captain Shaw. ECF No. 1 at PageID 23. Plaintiff alleges that he was cuffed and forced "under duress" to attend disciplinary proceedings conducted by Lieutenant Moler and Secretary Jordan. *Id.* Plaintiff alleges that there is no electronic recording of those disciplinary proceedings, in violation of rules governing prison procedure. *Id.* at PageID 24.

The parties discussed a conduct report written by Adu, which Plaintiff had not previously seen. ECF No. 1 at PageID 24. Moler agreed that Plaintiff had a right to threaten to file a lawsuit, and that Adu could not have first-hand knowledge of what happened in Shaw's office. *Id.* at PageID 24-25. However, Moler did not find the report to be false or the result of a conspiracy, and did find that Plaintiff was litigious and argumentative. *Id.* at PageID 24. She found Plaintiff guilty of violating prison rules (i.e., failing to report to his work shift and misbehavior) and sentenced him to ten days in TPU. *Id.* at PageID 26. Plaintiff alleges that he was not timely given a copy of the misconduct report on which his guilty finding was based, in violation of Ohio Revised Code Section 5120-9-07. *Id.*

Plaintiff alleges that after he received the Beckwith misconduct report, he repeatedly asked for access to the J-PAY kiosk to file an informal complaint against Beckwith, Adu, and Huffman, but was denied access by multiple prison guards. ECF No.

1 at PageID 27. Officer Edwards informed Plaintiff that there was no access to the phone or the kiosk for the first seven days in TPU. *Id.*

Plaintiff alleges that Shaw, Adu, Huffman, McCoy, Moler and Jordan violated Ohio Administrative Code 5120-9-06 (inmate rules of conduct), Ohio Administrative Code 5120-9-07 (conduct reports), Ohio Administrative Code 5120-9-08(D) (recording of disciplinary proceedings), Ohio Administrative Code 5120-9-31(A) (access to inmate grievance procedure), Ohio Revised Code Section 2913.31(A)(2) (forgery), Ohio Revised Code Section 2921.12(A)(2) (tampering with evidence), and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution (free expression, petition for redress of grievances, retaliation, unnecessary and unreasonable bodily restraint, unnecessary and unreasonable strip searches, and due process). ECF No. 1 at PageID 21-32. Plaintiff also asserts claims for civil conspiracy, vicarious liability (Defendant Shaw only), and malicious prosecution. *Id.* at PageID 30-32. He seeks compensatory and punitive damages. *Id.* at PageID 29.

### D. Third Cause Of Action

Plaintiff's Third Cause of Action is based upon the facts underlying his First and Second Causes of Action. ECF No. 1 at PageID 32-40. Plaintiff challenges the validity and constitutionality of ODRC Rule 5.7, which prohibits "[d]isrespect towards another person, including instigation of, or perpetuating fighting. (DRC inmate rule of conduct 5.7)." OAC 5120-9-06(C)(32). A similar rule, ODRC Rule 26, had been in effect when Williamson signed the conduct report on November 8, 2022, and she listed Rule 26 as one of the rules that had been violated. ECF No. 1-1 at PageID 61. At the time, Rule 26

prohibited inmates from exhibiting disrespect to an officer, staff member, visitor or other inmate. OAC 5120-9-06(C)(26) (West, Westlaw 2021-22 OMR pam. # 10 (A), eff. Apr. 14, 2022). However, the regulation was amended to remove Rule 26 effective August 7, 2023. OAC 5120-9-06 (West, Westlaw 2023-24 OMR pam. # 1 (R-E), eff. Aug. 7, 2023).

Bringing both a facial challenge and an as-applied challenge, Plaintiff argues that ODRC Rules 5.7 and 26 are "(1) void-for-vagueness; (2) explicitly enacted to impose content-based, viewpoint-based and speaker-based restrictions on expression; and (3) impermissibly delegates discretionary authority to prison officials in an arbitrary and discriminatory manner." ECF No. 1 at PageID 32-34. Plaintiff seeks injunctive relief.

### E.    Fourth Cause Of Action

After Michael DeMartino became the new warden of LoCI in 2023, he instituted standing counts at 11:00 a.m., 4:00 p.m. and 9:00 p.m. ECF No. 1 at PageID 40. The prior warden only conducted one standing count every 24 hours. *Id*. Plaintiff alleges that the new standing counts constituted "an exaggerated response to a construction project at the prison," even on days when there was no construction work. *Id*. at PageID 40-41.

On June 28, 2023, Plaintiff wore earbuds to reduce the construction noise and leaned over his tablet during the count, as he always did. ECF No. 1 at PageID 41. Plaintiff was approached by officer Hood, officer Gause, and an unknown officer. *Id*. Hood ordered Plaintiff to "face forward." Plaintiff removed his earbuds, turned left to face Hood, and said: "You can see I'm standing, right?" *Id.* Unlike every previous day, when Plaintiff's stance would have been considered compliant, Gause ordered Hood to place Plaintiff in handcuffs. *Id*. at PageID 42-43. Gause cinched the handcuffs tightly

11

against Plaintiff's skin and wrist joints, allegedly to cause Plaintiff injury and pain. *Id*. Gause grabbed Plaintiff's arm, told Hood that he would "take care" of Plaintiff, and pushed Plaintiff into the door as they passed through the doorway. *Id*. Gause then passed Plaintiff to another guard who took him outside. *Id.*

Once outside, Plaintiff told the guard that the handcuffs were so tight that he could feel "pulsing in [his] wrists" corresponding to his heartbeat as well as tingling in his right hand and numbness in his right fingers, even after the handcuffs were loosened. ECF No. 1, PageID 43. After Plaintiff was placed in a holding cell and the handcuffs were removed, there were indentations in his skin from where the handcuffs had been. *Id*. For the next several days, his wrists were swollen and sore, and he had noticeable bruising on his right hand. *Id.* at PageID 43-45. Plaintiff alleges the handcuffing incident was a "direct, targeted response in retaliation" for filing grievances against Hood and for his prior negative interactions with Gause, as was the motivation to put him in restrictive housing. *Id.*

Plaintiff was transferred to TPU. ECF No. 1 at PageID 44. He was strip searched twice during the transfer process, once in transportation and again in TPU, even though he was handcuffed the whole time and unable to obtain any contraband in between the first and second searches. *Id.*

Plaintiff alleges that Gause and Hood conspired with each other to file a false misconduct report and accuse Plaintiff of violating multiple prison rules. ECF No. 1 at PageID 44. Five days after being taken to TPU, Plaintiff was brought before Rules Infraction Board ("RIB") members Jordan and Page to address the conduct report. *Id.* at

12

PageID 45. Plaintiff alleges that Jordan and Page decided to find him guilty before the hearing occurred and had no interest in hearing Plaintiff's arguments regarding why he was not guilty. *Id*. at PageID 45-46. Plaintiff alleges that he was found guilty based on an altered admission that he was out of place for the head count, even though review of the video confirmed that he was not out of place. *Id.* at PageID 45-46. Plaintiff unsuccessfully appealed the decision. *Id.* at PageID 47.

Plaintiff alleges that Gause, Hood, Jordan and Page violated Ohio Administrative Code 5120-9-08(D) (recording of disciplinary proceedings), Ohio Revised Code Section 2913.31(A)(2) (forgery), Ohio Revised Code Section 2921.12(A)(2) (tampering with evidence), and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution (free expression, petition for redress of grievances, retaliation, unnecessary and unreasonable bodily restraint, unnecessary and unreasonable strip searches, due process, and excessive force). ECF No. 1 at PageID 48-50. He also asserts claims for civil conspiracy, vicarious liability (Defendant Gause only), and malicious prosecution. *Id*. at PageID 47-49. He seeks compensatory and punitive damages. *Id*. at PageID 47.

### F.    Fifth Cause Of Action

On July 26, 2023, Plaintiff left his dorm due to the heat and waited by the track and exercise machines until mealtime. ECF No. 1 at PageID 50. When it was time to eat, Plaintiff was walking to the dining hall when officer Moler stopped him. *Id*. According to Plaintiff, Molder "refused to allow me to eat the evening's meal by threat unless I gave her my ID to issue a misconduct report for 'being out-of-place.'" *Id*. Plaintiff filed a

13

grievance against Moler to complain about the arbitrary ultimatum, along with a grievance against the warden for allowing such a practice. *Id.*

On August 1, 2023, Lee denied the grievance as being inappropriate because it used prohibited language (i.e., the word "shit"). ECF No. 1 at PageID 51. Lee warned Plaintiff that "[c]ontinued use of such language will subject you to restriction from the grievance procedure . . . and disciplinary action . . . ." *Id.*

Plaintiff alleges that Lee violated the First and Fourteenth Amendments to the United States Constitution (free expression, petition for redress of grievances, retaliation, and due process). ECF No. 1 at PageID 52-53. He seeks compensatory and punitive damages. *Id.* at PageID 52.

### G.    Sixth Cause Of Action

Plaintiff alleges that because he was wrongfully convicted based upon the false conduct reports described above, his security level was raised from a level 1 to a level 2. ECF No. 1 at PageID 53. As a result, he experienced a decrease in the number of packages he can receive, the number of good days he is eligible to receive, and the amount of state pay he receives. *Id.* Plaintiff asserts that Adu, Gause, Shaw, Huffman, and Hood are all liable for his security level increase. *Id.* He seeks an order expunging his institutional record and reversing the increase in his security level. *Id.* at PageID 54.

### H.    Seventh Cause Of Action

At or around 12:15 p.m. on January 10, 2024, Plaintiff walked to the library. ECF No. 5 at PageID 119. He passed White, who told him that the library does not open until 12:30 p.m. *Id.* After Plaintiff told White that he wanted to check the library schedule,

14

White yelled that the library was not open and told Plaintiff to go back to the dorm. *Id.* at PageID 119-20. Plaintiff thanked White "for that unprofessional, discourteous treatment" and "reminded" White that he agreed to the employee conduct rules. *Id.* at PageID 120. In response, White demanded to see Plaintiff's identification and threatened to issue a misconduct report due to Plaintiff being "out-of-place." *Id.*

Plaintiff alleges that White violated the First and Fourteenth Amendments to the United States Constitution (free expression, petition for redress of grievances, retaliation). ECF No. 5 at PageID 121. He seeks compensatory and punitive damages. *Id.*

## I.     Eighth Cause Of Action

During dinner on March 2, 2024, Plaintiff took several potatoes from an abandoned food tray. Officer Saad yelled at Plaintiff and instructed him to return the tray at the window. ECF No. 7 at PageID 133. Plaintiff did as Saad requested, remarking as he carried the tray: "All you had to do was ask, you don't have to be a dick about it." *Id.* Saad asked Plaintiff what he had said. Plaintiff restated his comment loudly so Saad could hear him. *Id.* at PageID 134. Saad ordered Plaintiff to "cuff up" and Plaintiff turned around and placed his hands behind his back. *Id.* Saad placed one cuff under Plaintiff's right wrist but did not close it. He told Plaintiff that if he apologized, Saad would let him go. *Id.* Feeling compelled to comply, Plaintiff apologized and Saad let him go. *Id.* Plaintiff told Saad that his actions were a restraint on his right to free speech and that he intended to file a lawsuit to challenge Saad's behavior. *Id.* at PageID 135.

Plaintiff alleges that Saad violated the First Amendment (retaliation, freedom of speech) and used arbitrary harassment to retaliate against him in violation of the First,

15

Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments to the United States Constitution. ECF No. 7 at PageID 136-37.

### J.     Ninth Cause Of Action

On March 10, 2024, in front of other inmates in the dining hall, White called Plaintiff an asshole. ECF No. 7 at PageID 137. Plaintiff reminded White that he had to obey standards of employee conduct. White demanded to see his identification, which Plaintiff views as "a standard operating procedure for intimidation." *Id*. Plaintiff told White that he violated standards of employee conduct by calling him an asshole. *Id*. at PageID 137-38. White responded: "Well, since you want to make a big deal about it, cuff-up and we will talk about it in the captain's office." *Id*. at PageID 138. Plaintiff acquiesced to being handcuffed but viewed the response as constituting retaliation. *Id*. He later complained that the handcuffs had visibly injured both of his wrists. *Id*.

Plaintiff filed an informal grievance against White under Ohio Administrative Code 5120-9-31(A)(J)(1). ECF No. 7 at PageID 137. However, Venable "recategorized" that grievance to a kite to retaliate against Plaintiff for filing it, and also destroyed the complaint ID number and LOCI prefix. *Id*. As a result, the grievance was denied.

Plaintiff alleges that White and Venable violated the First Amendment (retaliation), White violated the Fourth Amendment (unreasonable seizure), and White used arbitrary harassment to retaliate against him in violation of the First, Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments to the United States Constitution. ECF No. 7 at PageID 139-40.

### K.    Tenth Cause Of Action

On March 3, 2024, Plaintiff filed a written, electronic informal complaint to

initiate the inmate grievance procedure. ECF No. 7 at PageID 140. It stated, in part:

> On the morning of February 27, 2024, I was returning to C-2 dorm after
> getting the charging port replaced on my tablet. Prison guard Saad
> unreasonably detained myself and almost another dozen captives without
> legitimate penological justification preventing free movement from 3-yard
> to 6-yard. Saad escorted a victim to D-3 via the 3-yard access door and
> called an unknown ignorant twit to guard the remaining hostages.
>
> After about 10-15 minutes of unreasonable detainment, Lt. Frye
> approached and inquired why the group of livestock held captive and
> abused at this state sanctioned concentration camp was detained while
> others were moving around freely. The unknown twit, Saad's patsy,
> stumbled, mumbled and bumbled an attempted explanation. Frye
> disregarded his bullshit with a discouraging shaking of his head in disgrace
> and explicitly stated that there was no legitimate reason to detain us.
>
> After I exercised by right to free speech explaining that we had already
> been detained for almost 15 minutes, Frye responding by yelling: "Shut the
> fuck up and go." Frye's unreasonable, in appropriate, abusive verbal attack
> in response to my expression added insult to the arbitrary abuse of power
> and constitutional injury perpetrated by Saad and continued by the
> unknown twit through conspiracy.

ECF No. 7 at PageID 141.

Plaintiff alleges that the following day, Venable recategorized the grievance to a

kite, thereby destroying it and leaving him with nothing to exhaust. ECF No. 7 at PageID

141. Venable also allegedly gave the grievance to Gause to "orchestrat[e] a conspiracy"

against Plaintiff and retaliate against him for filing the grievance. *Id*.

On March 12, 2024, Gause issued a misconduct report against Plaintiff for

disrespect. At 8:00 a.m. the next day, an unknown guard woke Plaintiff up, handcuffed

him, helped him pack up his property, and took him to mental health for evaluation. ECF

17

No. 7 at PageID 142. An unknown prison guard then searched and seized his property, and another unknown prison guard performed a strip search and took him to a two-man cell that Plaintiff describes as "the hole." He stayed there for several days. *Id*. At one point, Plaintiff spoke with Warden DeMartino and an unknown individual about the allegedly retaliatory conduct of officers Gause and Venable. *Id.* at PageID 143. However, DeMartino mocked him and did nothing about Plaintiff's complaints. *Id*.

On March 18 and 19, 2024, Plaintiff was cuffed and taken to the RIB hearing room where his grievance was orally denied, leaving him with nothing to exhaust.[1] ECF No. 7 at PageID 143. Page and McCoy did not record the hearing. *Id*.

Plaintiff alleges that Page, McCoy, Venable and Gause violated the First (retaliation, freedom of speech, petition for redress of grievances), Fourth (unreasonable seizure), Eighth (excessive force, cruel and unusual punishment) and Fourteenth (substantive and procedural due process) Amendments to the United States Constitution. He also asserts claims for vicarious/superior liability (Venable only), civil conspiracy, and malicious prosecution. Finally, Plaintiff alleges that the facts set forth in the Tenth Cause of Action support the facial and as-applied challenges to Rule 5.7 that he asserts in his Third Cause of Action. ECF No. 7 at PageID 147-51. He seeks compensatory and punitive damages.

---

[1] Plaintiff also recounts the contents of a grievance he filed regarding the March 18, 2024 hearing, another grievance he filed that same day, and an informal complaint he filed the same day. ECF No. 7 at PageID 143-44. It is unclear if Plaintiff intends for the facts asserted in these filings to be part of this claim.

### L.      Eleventh Cause Of Action

On March 27, 2024, Plaintiff "filed a grievance against the institutional inspector for orchestrating a conspiracy to retaliate against [Plaintiff]" for filing an informal written complaint. ECF No. 7 at PageID 151. Plaintiff alleges that there is a "pattern or practice of threatening to initiate disciplinary action for the 'disrespectful' and/or 'otherwise inappropriate' content contained in a written grievance." *Id*. at PageID 151-52. Plaintiff alleges that by engaging in this conduct, Collins violated the First (retaliation, free speech, petition for redress of grievances), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendment to the United States Constitution. *Id*. at PageID 152. He seeks compensatory and punitive damages. *Id*.

### M.      Twelfth Cause Of Action

Ohio Administrative Code 5120-9-31(F) states, in relevant part: "An inmate may be subject to disciplinary action for . . . disrespectful, threatening or otherwise inappropriate comments made in an informal complaint, grievance, grievance appeal or grievance against the warden or inspector of institutional services." In his Twelfth Cause of Action, Plaintiff alleges that Rule 5.7 and Ohio Administrative Code 5120-9-31(F) are unconstitutional facially and as applied for "all of the same reasons stated in the Third Cause of Action." ECF No. 7 at PageID 152.

### N.      Summary Of Claims

Construing Plaintiff's *pro se* pleadings liberally, as it is required to do, the Court construes Plaintiff's pleadings as asserting claims under the following laws:

1. First Amendment (freedom of speech) claims: (a) against Williamson for issuing a false conduct report in response to Plaintiff stating she was being ridiculous; (b) against Lee for arbitrarily disregarding and/or refusing to address the merits of Plaintiff's grievance due to foul language in the grievance; (c) against White for threatening to issue a misconduct report after Plaintiff commented on White's allegedly unprofessional behavior; (d) against Saad for placing Plaintiff in handcuffs in response to Plaintiff's comment to Saad about Saad's behavior regarding the food tray; and (e) against Gause, Venable and Collins for issuing a false conduct report against Plaintiff in retaliation for Plaintiff criticizing a public official in a written grievance and/or the use of "inappropriate language." ECF No. 1 at PageID 52; ECF No. 7 at PageID 136, 148, 151.

2. First Amendment (retaliation) claims: (a) against Williamson for issuing a false conduct report in response to Plaintiff stating she was being ridiculous; (b) against Shaw, Adu, and Huffman for conspiring to manufacture a false conduct report in retaliation for Plaintiff threating to file a lawsuit; (c) against Gause (in his capacity as Hood's supervisor) and Hood for conspiring to "manufacture a false misconduct report" in retaliation for Plaintiff's criticism of a "public official"; (d) against Lee for arbitrarily disregarding/refusing to address the merits of his grievance because of the foul language Plaintiff used in the grievance; (e) against White for threatening to issue a misconduct report after Plaintiff commented on White's allegedly unprofessional behavior; (f) against Saad for placing Plaintiff in handcuffs in response to Plaintiff's comment to Saad about Saad's behavior regarding the food tray; (g) against Venable for allegedly destroying Plaintiff's grievance addressing White and Gauses' behavior in retaliation for Plaintiff's

filing them; and (h) against Gause and Venable for issuing a false conduct report against Plaintiff in retaliation for Plaintiff criticizing a public official in a written grievance. ECF No. 1 at PageID 14, 30-31, 47-48, 52; ECF No. 5 at PageID 121; ECF No. 7 at PageID 136, 140, 148.

    3.  Fourth Amendment (unreasonable search and seizure) claims: (a) against Williamson for allegedly filing a false conduct report that resulted in being placed in TPU; (b) against Shaw and Huffman for unnecessarily restraining Plaintiff in handcuffs; (c) against unnamed officers for performing a strip search during his processing into TPU; (d) against Huffman and Adu for making false statements that resulted in being placed in TPU; and (e) against Venable and Gause for causing an "unnecessary and unreasonable" strip search in retaliation for Plaintiff's filing of grievances. ECF No. 1 at PageID 14-15, 30, 32; ECF No. 7 at PageID 149.

    4.  Fourteenth Amendment (substantive due process) claims: (a) against Williamson for issuing the alleged false conduct report in response to Plaintiff stating she was being "ridiculous"; (b) against Shaw, Adu, and Huffman for conspiring to manufacture a false conduct report in retaliation for Plaintiff threating to file a lawsuit; (c) against McCoy for refusing to give Plaintiff a copy of a conduct report until the day of his disciplinary proceedings; (d) against Huffman and Adu for making false statements regarding Plaintiff in the conduct report; (e) against Gause (in his capacity as Hood's supervisor) and Hood for conspiring to "manufacture a false misconduct report" in retaliation for criticizing a "public official"; (f) against Lee for arbitrarily disregarding and/or refusing to address the merits of his grievance because of the foul language

21

Plaintiff used in the grievance; (g) against Gause and Venable for manufacturing a false misconduct report to punish Plaintiff for filing grievances; and (h) against Gause, Venable and Collins for issuing false conduct reports against Plaintiff in retaliation for Plaintiff criticizing a public official or otherwise using inappropriate language in a written grievance. ECF No. 1 at PageID 14, 30-32, 48; ECF No. 7 at PageID 148, 151.

5. Fourteenth Amendment (procedural due process) claims: (a) against Shaw and Huffman for unnecessarily restraining Plaintiff in handcuffs; (b) against Shaw, Adu, and Huffman for conspiring to manufacture a false conduct report in retaliation for Plaintiff threating to file a lawsuit; (c) against McCoy for refusing to give Plaintiff a copy of a conduct report until the day of his disciplinary proceedings in violation of his rights under state law; (d) against Moler and Jordan for failing to record the prison disciplinary proceedings; (e) against Huffman and Adu for making false statements regarding Plaintiff in the conduct report; (f) against Gause (in his capacity as Hood's supervisor) and Hood for conspiring to "manufacture a false misconduct report" in retaliation for criticizing a "public official"; and (g) against Lee for arbitrarily disregarding and/or refusing to address the merits of his grievance because of the foul language contained in the grievance. ECF No. 1 at PageID 30-32, 47-49, 52.

6. Malicious prosecution claims: (a) against Williamson for allegedly filing a false conduct report resulting in Plaintiff's misconduct hearing and related sanctions; (b) against Huffman and Adu for making false statements regarding Plaintiff in the conduct report; (c) against Gause (in his capacity as Hood's supervisor) and Hood for conspiring to "manufacture a false misconduct report" in retaliation for criticizing a "public

22

official"; (d) against Venable and Gause for issuing a false misconduct report in retaliation for Plaintiff filing grievances; and (e) against Page and McCoy for conspiring with Venable and Gause to issue the false misconduct report. ECF No. 1 at PageID 14-15, 32, 49; ECF No. 7 at PageID 150-51.

7.  Vicarious liability/respondeat superior claims: (a) against Shaw for conspiring with Adu and Huffman to manufacture a false conduct report in retaliation for Plaintiff threatening to file a federal lawsuit; (b) against Gause (in his capacity as Hood's supervisor) for conspiring with Hood to "manufacture a false misconduct report" in retaliation for criticizing a "public official"; and (c) against Venable (in his capacity as Gause's supervisor) for recategorizing his grievance as a kite, rendering it unexhausted, in retaliation for Plaintiff filing it. ECF No. 1 at PageID 30, 47-48; ECF No. 7 at PageID 148.

8.  Civil conspiracy claims: (a) against Shaw, Adu, and Huffman for conspiring to "manufacture" a false conduct report in retaliation for Plaintiff threatening to file a federal lawsuit; (b) against Gause (in his capacity as Hood's supervisor) and Hood for conspiring to "manufacture a false misconduct report" in retaliation for criticizing a "public official"; and (c) against Gause and Venable for manufacturing a false misconduct report to punish Plaintiff for filing grievances. ECF No. 1 at PageID 30, 47-48; ECF No. 7 at PageID 148.

9.  Sixth Amendment claim against McCoy for refusing to give Plaintiff a copy of the conduct report until the day of his disciplinary proceedings in violation of his rights under state law. ECF No. 1 at PageID 31-32.

10. Eighth Amendment (excessive force) claims: (a) against Gause and Hood for restraining Plaintiff with unreasonably tight handcuffs; and (b) against unnamed officers for performing strip searches while processing him to TPU. ECF No. 1 at PageID 48-49.

11. Eighth Amendment (cruel and unusual punishment) claims against Gause, Venerable, and Collins for holding Plaintiff in solitary confinement for seven days based on a false misconduct report. ECF No. 7 at PageID 148-49, 151.

12. Unspecified claims for violation of state prison regulations: (a) against Moler, Jordan and Page for failing to record the prison disciplinary proceedings, thereby depriving Plaintiff of a complete and accurate record of the proceedings; and (b) against Page and McCoy for failing to keep a complete and accurate record of the RIB proceeding on March 18, 2024. ECF No. 1 at PageID 32, 49; ECF No. 7 at PageID 150.

13. Unspecified claims for violations of Ohio criminal laws (forgery and tampering with evidence) against Williamson, Adu, Shaw, Huffman, Gause, Hood, Jordan and Page. ECF No. 1 at PageID 9-11, 44-45.

14. Unspecified claims regarding Plaintiff's security level increase against Adu, Gause, Shaw, Huffman, and Hood. ECF No. 1 at PageID 2, 53.

For relief, Plaintiff seeks punitive and compensatory damages, expungement, and reversal of his security level increase. ECF No. 1 at PageID 54; ECF No. 5 at PageID 121. Plaintiff also seeks a declaration that the specified prison regulations are unconstitutional facially and as applied to Plaintiff, as well as an injunction prohibiting their enforcement. ECF No. 1 at PageID 32-40; ECF No. 7 at PageID 148-49, 152-53.

24

### III.    **MOTION TO CONSOLIDATE**

Plaintiff filed a Motion to Consolidate the claims in the Complaint with the claims in the First Supplemental Complaint. ECF No. 6. Because it appears that Plaintiff wishes to consolidate all of his claims, the Court will liberally construe his Motion as including the claims in the Second Supplemental Complaint.

In the Motion to Consolidate, Plaintiff argues that he has meager resources and "do[es] not want to clog up the docket of this Honorable Court with numerous complaints when the fundamental underlying issue in each cause of action is identical." *Id*. at PageID 131. He alludes to the possibility of filing more claims and requests guidance "on how to proceed in order to appropriately and effectively prosecute additional causes of action intertwined with *Wood v. Chambers-Smith*." *Id*.

Federal Rule of Civil Procedure 18(a) allows a plaintiff to "join, as independent or alternative claims, as many claims . . . as the party has against an opposing party." Fed. R. Civ. P. 18(a). Therefore, Plaintiff is permitted to assert multiple claims, even claims that are based upon different and unrelated facts, against a single defendant.

If Plaintiff seeks to sue multiple defendants, then he must comply with Federal Rule of Civil Procedure 20(a). Rule 20(a)(2) allows multiple defendants to be sued in one action "if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A) & (B) (emphasis added). The Sixth Circuit has explained that "[i]f the same issues of fact would determine both claims, they

25

arise out of the same transaction or occurrence, but if the proof of one claim would have

no connection with the proof of the other, the claims do not arise out of the same

transaction or occurrence." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa*

*v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969) (internal quotations and citation omitted).

Here, the above description of Plaintiff's claims shows that he has sued numerous

unrelated Defendants based upon ***different*** "transaction[s], occurrence[s], or series of

transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Although there is a common

theme—namely, Plaintiff's belief that the First Amendment allows him to speak freely

without being punished even though prison rules penalize disrespect—Plaintiff's causes

of action involve different facts, different Defendants, and different proof. The fact that

there is a common theme does not satisfy the requirements of Rule 20(a)(2). Moreover,

although Plaintiff broadly seeks injunctive and declaratory relief with respect to the

prison rules prohibiting disrespect, his request for damages from each Defendant will

require the Court to examine each individual Defendant's entitlement to qualified

immunity based upon wholly different sets of facts.

Therefore, because Plaintiff's causes of action are not based upon the "same

transaction, occurrence, or series of transactions or occurrences," Rule 20(a)(2) does not

permit Plaintiff to sue all of these Defendants in one lawsuit. *Perry v. Erdos*, No. 1:22-

CV-178, 2023 WL 2781585, at *2 (S.D. Ohio Apr. 5, 2023), *report and recommendation*

*adopted*, No. 1:22-CV-178, 2023 WL 6370421 (S.D. Ohio Sept. 30, 2023) (explaining

that under Rule 20(a)(2) a plaintiff cannot "combine into one lawsuit unrelated claims

against different defendants" (internal quotations and citation omitted)).

It is also important to note that when cases are filed by prison inmates, the Prison Litigation Reform Act ("PLRA") requires them to pay the required filing fees (albeit over time) and imposes a three-strike rule to deter frivolous lawsuits. Courts require prison inmates to bring separate lawsuits when asserting unrelated claims against different defendants, so that they cannot sidestep these requirements of the PLRA. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006).

Accordingly, the Court concludes that Defendants are misjoined under the Federal Rules of Civil Procedure, and **DENIES** the Motion to Consolidate. The remedy for misjoinder is set forth in Federal Rule of Civil Procedure 21, which permits the Court "on its own . . . at any time, on just terms, [to] add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Although the Court has the discretion to choose which parties to drop, or which claims to sever, it would prefer to give Plaintiff an opportunity to make that decision.

Therefore, the Court will give Plaintiff leave to file an amended complaint **within thirty (30) days of the date of this Order** in which he either sues one defendant and asserts all claims (whether factually related or not) that he has against that defendant, or sues multiple defendants based on *one* transaction, occurrence, or series of transactions or occurrences, and which includes common questions of law or fact as to all defendants. If Plaintiff does not submit an amended complaint before this deadline expires, then the Court will decide which Defendants to drop, or which claims to sever, from this lawsuit.

## IV.    CONCLUSION

Plaintiff's IFP Motion, ECF No. 4, is hereby **GRANTED**. Plaintiff's Motion to Consolidate, ECF No. 6, is **DENIED**. Plaintiff is **GIVEN LEAVE** to file an amended complaint as directed above **within thirty (30) days of the date of this Order.**

**IT IS SO ORDERED.**

May 21, 2024                          _/s/ Caroline H. Gentry_
Date                                            Caroline H. Gentry
                                                   UNITED STATES MAGISTRATE JUDGE

### Procedure on Objections to Order

Any party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge. S.D. Ohio Civ. R. 72.4.

28

**CALCULATION OF INITIAL PARTIAL FILING FEE**

Prisoner's name: _____

Case number: _____

Average Monthly Balance $_____
(for six-month period preceding filing of complaint or notice of appeal)

Average Monthly Deposits $_____
(for six-month period preceding filing of complaint or notice of appeal)

Initial Partial Filing Fee $_____
(the greater of the average monthly deposits or the average monthly balance x .20)


_____     _____
Date                                Signature