# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WOOD, | : | Case No. 2:24-cv-165 |
| | : | |
| Plaintiff, | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| ANNETTE CHAMBERS SMITH, *et. al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff Michael Wood, a state prisoner who was formerly an inmate of London Correctional Institution ("LoCI"), filed this civil rights action under 42 U.S.C. § 1983 both *pro se* (i.e., without the assistance of counsel) and *in forma pauperis* (i.e., without being required to pay certain fees either at all or up front). This matter is before the undersigned Magistrate Judge to conduct the required initial screen of Plaintiff's Amended Complaint (Doc. No. 10) under the Prison Litigation Reform Act of 1995 (PLRA), 28 U.S.C. § 1915A(b).

For the reasons set forth below, the undersigned **RECOMMENDS** that all claims asserted in Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

## I.    LEGAL STANDARDS

### A.    Requirement To Screen Plaintiff's Amended Complaint

Because Plaintiff is a prisoner who is seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen the

Amended Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners").

### B.      Determining That a Complaint Is Frivolous

A complaint is frivolous if the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of being irrational or 'wholly incredible.'" *Denton*, 504 U.S. at 32; *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional," *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010), or "clearly irrational or wholly incredible." *Ruiz v. Hofbauer*, 325 F. App'x 427, 429-30 (6th Cir. 2009).

### C.      Determining That a Complaint Fails to State a Claim Upon Which Relief May Be Granted

The Court is required to dismiss complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1). To avoid dismissal

under this standard, the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the "dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under §§ 1915A(b)(1) and 1915(e)(20(B)(ii)"). Thus, the complaint must include factual allegations that are both ***well-pleaded*** and ***plausible***.

Factual allegations are well-pleaded if they are specific and support the plaintiff's claims. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (courts need not accept "non-specific factual allegations and inferences"). "[A] legal conclusion couched as a factual allegation" is not well-pleaded and need not be accepted as true. *Twombly*, 550 U.S. at 555; *see 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[C]onclusory allegations … that the defendant violated the law" do not state a claim on which relief can be granted); *Frazier*, 41 F. App'x at 764 (6th Cir. 2002) (courts need not accept "unwarranted legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also 16630 Southfield Ltd. Partnership v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013)

(internal quotations and citation omitted) ("[T]he sufficiency of a complaint turns on its factual content, requiring the plaintiff to plead enough factual matter to raise a plausible inference of wrongdoing."). Whether an inference is plausible "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Iqbal*, 556 U.S. at 678.

In addition, a "complaint must contain either direct or inferential allegations respecting all the material elements" of a claim "to sustain a recovery under *some* viable legal theory." *Columbia v. Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (emphasis in original).

### D.    Liberal Construction of *Pro Se* Complaints

Plaintiff is representing himself *pro se* – that is, without the assistance of counsel. This Court is required to liberally construe a *pro se* complaint and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This standard may require "active interpretation in some cases [in order] to construe a *pro se* petition to encompass any allegation stating federal relief." *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985). Nevertheless, a *pro se* complaint must adhere to the "basic pleading essentials" and the Court should not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Instead, the complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Case: 2:24-cv-00165-ALM-CHG Doc #: 15 Filed: 11/07/25 Page: 5 of 33  PAGEID #: 303

## II.     PLAINTIFF'S FACTUAL ALLEGATIONS

The following statement of facts is taken from the Amended Complaint (Doc. No. 10). As it is required to do, the Court accepts as true all well-pleaded and plausible factual allegations (but not legal allegations) in the Amended Complaint for purposes of conducting this initial screen.

Plaintiff has sued Ohio Department of Rehabilitation and Corrections ("ODRC") Director Annette Chambers-Smith ("Chambers-Smith") in her official capacity[1] and the following individuals in their official and individual capacities: Elvan Shaw ("Shaw"), Freda Adu ("Adu"), Thaddeus Huffman ("Huffman"), Mark McCoy ("McCoy"), Elayna Moler ("Moler"), and Jonathan Jordan ("Jordan"). (Doc. No. 10 at PageID 259.)

Plaintiff was incarcerated at LoCI beginning on October 27, 2022. (Doc. No. 10 at PageID 260.) The following day, Sergeant LeVan (who is not named as a defendant) told Plaintiff that he had been reclassified as a porter in a C-2 dorm. LeVan did not give Plaintiff a specific work assignment but said that "someone would be coming along shortly to do so." However, no one did. (*Id*.)

At approximately 3:50 p.m. on December 18, 2022—shortly before the 4:00 p.m. prisoner count—Defendant Adu came to Plaintiff's room and asked him why he did not show up for his cleaning job. (Doc. No. 10 at PageID 260-61.) Plaintiff stated that he was

---

[1] The undersigned construes the Amended Complaint as suing Defendant Chambers-Smith in her official capacity only for two reasons. The first reason is because the caption of the Complaint clearly states that all other individual Defendants (but not Defendant Chambers-Smith) are being sued in both their official and individual capacities. The second reason is because there are no factual allegations against Defendant Chambers-Smith; instead, it appears she was sued in her capacity as ODRC Director because Plaintiff seeks injunctive relief regarding certain prison rules.

not assigned to a cleaning job and did not know what Adu was talking about. (*Id*.) Adu accused Plaintiff of lying and said she would "look into" the issue. (*Id*.)

Around 4:30 p.m., after the prisoner count had been completed, Plaintiff walked to the guard desk and asked Adu what she meant. (Doc. No. 10 at PageID 261.) They had "a calm, informative, cordial conversation aided by a three-ring binder containing schedule sheets for dorm porter cleaning assignments." (*Id*.) Adu pointed to a sheet in a binder that indicated Plaintiff was assigned to weekend cleaning duty in the bathrooms at 3:30 p.m. and 8:30 p.m. on Saturdays and Sundays. (*Id*.) Plaintiff reiterated that he had not been told of the assignment and asked what he was supposed to do going forward. (*Id*.)  Adu told him to check in at the work desk at 3:30 p.m. and 8:30 p.m. on Saturdays and Sundays and then clean the sinks and mirrors. (*Id*.)  She did not instruct Plaintiff to clean the bathrooms right away. (*Id*.) Because it was past 4:30 p.m., Plaintiff believed that he was not required to begin his cleaning assignment until 8:30 p.m. that evening. (*Id*.)

Plaintiff believed that Sergeant C. King (who is not named as a defendant) deliberately failed to inform him of his work assignment, to retaliate against Plaintiff for filing an informal complaint against him. (Doc. No. 10 at PageID 261-62.) Plaintiff told Adu about his theory and described "multiple examples of abusive misconduct by staff," all while speaking "calmly and accurately." (*Id*. at PageID 262.)

Adu told Plaintiff that he "needed to inform a Lieutenant or Captain of these statements of fact." (Doc. No. 10 at PageID 262.) She called Defendant Shaw's office while Plaintiff returned to his cell and gathered evidentiary documents for presentation. (*Id*.) Shortly thereafter, Defendant Huffman approached Plaintiff and said he was taking

Plaintiff to the Captain Shaw's office. (Doc. No. 10 at PageID 262.) Huffman placed

Plaintiff in handcuffs and stated that Captain Shaw had instructed him to do so. (*Id.*)

When Plaintiff arrived in Captain Shaw's office, three other people were present:

Huffman, Shaw, and a man who Plaintiff believed to be Lieutenant Caleb-Moli. (Doc.

No. 10 at PageID 263.) Plaintiff "walked in front of Shaw sitting at a desk and began to

speak, telling him that I was not informed of any job and continued to speak over him,

failing to answer his direct questions." (*Id.*) Shaw slammed his fists on the desk and

yelled at Plaintiff. (*Id.*) He then stopped yelling, apologized, and asked Plaintiff why he

did not report for work. (*Id.*) Plaintiff said that no one told him about the assignment. (*Id.*

at PageID 263-64.)  Shaw told Huffman to take the handcuffs off Plaintiff. (*Id.* at PageID

264.) Plaintiff calmly said he would file a federal lawsuit and inform Annette Chambers-

Smith, the Correctional Institutional Inspection Committee and the Ohio Inspector

General about the "abusive misconduct" taking place at LoCI. (*Id.*) Shaw smiled and

said: "Ooohoohoo, you're going to the hole[2] for a couple days." (*Id.* at PageID 264-65.)

Shaw then called Adu and repeatedly asked, in a harsh tone: "Did he do the job?"

(Doc. No. 10 at PageID 265.) Shaw told Adu to "[w]rite the ticket"[3] and hung up. (*Id.*)

Plaintiff protested that Adu had not told him to "do the job." (*Id.*) Shaw responded: "She

is new; how is she supposed to know?" (*Id.*) Shaw then told Huffman: "Take him up

---

[2] Plaintiff uses the terms "the hole" and "TPU" to refer to restrictive housing.

[3] The Court presumes the "ticket" referenced by Plaintiff is the conduct report authored by Defendant
Adu that appears to be e-signed by Defendant Huffman. (Doc. No. 1-1 at PageID 63.)

front [to transportation] then go help her write the ticket. *Make sure that it's done right*."

(*Id.* (emphasis in original))

Huffman transported Plaintiff to restrictive housing ("TPU"). (Doc. No. 10 at

PageID 266.) During the transfer process, Plaintiff was strip searched twice. (*Id.* at

PageID 267.) Specifically, he alleges:

> Part of the standard operating procedure for processing a prisoner into "the hole" (TPU) is an invasive strip search which was forced upon me twice by two separate unknown agents, the first time in transportation and once again upon entering TPU even though, at all times relevant, I was in a holding cell by myself or being escorted by a guard, handcuffed and had no opportunity obtain contraband in between strip searches.

(*Id.*) Plaintiff further alleges that "[t]he forced strip searches were an unnecessary/

unreasonable result of the conspiracy to manufacture false conduct reports in retaliation

to arbitrarily punish and harass." (*Id.*)

After he arrived at TPU, prison guard Edwards asked Plaintiff why he was there.

(Doc. No. 10 at PageID 267.) Plaintiff said he was unsure and asked Edwards to find out.

(*Id.*) A few hours later, Plaintiff asked whether Edwards had found out why he was in

TPU. Edwards said: "Yeah, apparently you threatened to file a lawsuit." (*Id.*)

Plaintiff alleges that Shaw "accessed the user account of [Lieutenant] Beckwith on

the institutional computer system in order to forge the first of two conduct reports (see

EXHIBIT B, Conduct report # LOCI-22-4022 (#1))." (Doc. No. 10 at PageID 266.)

Plaintiff alleges that Shaw improperly used Lieutenant Beckwith's name to cover up his

own retaliatory motive for placing Plaintiff in TPU. (*Id.*) Plaintiff alleges he "did not find

out that 'Beckwith' was actually Shaw until the afternoon of February 15, 2023 (see Informal Complaint Ref. # LOCI-0223001600)." (*Id.*)

The conduct report signed by Beckwith states that Plaintiff violated Rules 22 and 26 by his "[r]efusal to carry out work or other institutional assignments" and "[d]isrespect to an officer, staff member, visitor, or other inmate." (Doc. No. 1-1 at PageID 62 (the "Beckwith Report").) The Beckwith Report further states that Plaintiff "was irate, agitated, and refusing to carry out work or other institutional assignments, threatening officers and threatening to sue the institution and being disrespectful towards staff." *Id.*

Plaintiff alleges that Huffman and Adu conspired to "manufactur[e] . . . the false conduct report (see EXHIBIT C, Conduct report # LOCI-22-4022 (#2))" that covered up Shaw's retaliatory motive for placing him in TPU. (Doc. No. 10 at PageID 267.) The conduct report that Adu signed states:

> I officer Adu on Sunday 12/18/2022 at approximately 4:30pm walked to [Plaintiff] in his bed area ask [Plaintiff] to come perform his cleaning duties, but [Plaintiff] disrespectfully refused to, stating and I quote, "I never cleaned and I am not assigned to any cleaning duty." I walked to my desk and [Plaintiff] came to my desk and said to me he is going to sue the institution because he feels it is a set up due to reporting the staff. [Plaintiff w]alked to his bed area without completing his cleaning duty. When [Plaintiff] arrived to the Captain's office, he was even more so irate and agitated, and refusing to carry out work or other institutional assignments, threatening officers and threatening to sue the institution and being disrespectful towards staff.

(Doc. No. 1-1 at PageID 63 ("Adu Report," spelling corrected).) Like the Beckwith Report, the Adu Report states that Plaintiff violated Rules 22 and 26. (*Id.*)

On December 19, 2022, Defendant McCoy gave Plaintiff a copy of the Beckwith Report but not the Adu Report. (Doc. No. 10 at PageID 267-68.)

9

On December 20, 2022, Plaintiff was handcuffed and "forced under duress" to attend disciplinary proceedings conducted by Defendants Moler and Jordan. (Doc. No. 10 at PageID 268.) Plaintiff alleges that the disciplinary proceedings were not recorded, in violation of Ohio Administrative Code 5120-9-08(D). (*Id*. at PageID 268-69.)

The parties discussed the Adu Report, which Plaintiff had not previously seen and alleges he was not timely given in violation of Ohio Administrative Code Section 5120-9-07. (Doc. No. 10 at PageID 269-71.) Moler agreed that Plaintiff had a right to threaten to file a lawsuit, and that Adu could not have first-hand knowledge of what happened in Defendant Shaw's office. (*Id.* at PageID 269.) However, Moler did not find the report to be false or the result of a conspiracy and did find that Plaintiff was argumentative. (*Id.*)

Plaintiff was found guilty of violating prison rules and sentenced to ten days in TPU. (Doc. No. 10 at PageID 270.) Plaintiff unsuccessfully appealed the decision to the Warden/Warden designee. (*Id*. at PageID 274.) Plaintiff alleges that the decision "was affirmed by the chief legal counsel." (*Id*.)

Plaintiff repeatedly asked for access to the J-PAY kiosk to file a complaint against Defendants but was denied access by prison guards. (Doc. No. 10 at PageID 271.)

## III.    PLAINTIFF'S CLAIMS

Plaintiff asserts the following claims in the Amended Complaint:

**Count One (supervisory liability against Shaw).** In Count One, which is titled "superior liability," Plaintiff asserts that Defendant Shaw orchestrated a conspiracy to file a false conduct report in retaliation for Plaintiff's threat to file a lawsuit. (Doc. No. 10 at

PageID 274-75.) The undersigned construes this claim against Defendant Shaw as seeking damages under a theory of supervisory liability.

**Count Two (unnecessary/unreasonable bodily restraint against Shaw and Huffman).** In Count Two, Plaintiff sues Defendants Shaw and Huffman for handcuffing him without justification, in violation of the First (free speech and petition clauses), Fourth (unreasonable seizure), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 275.)

**Count Three (civil conspiracy against Shaw, Adu and Huffman).** In Count Three, Plaintiff sues Defendants Shaw, Adu and Huffman for a civil conspiracy to manufacture a false conduct report, in violation of the First (free speech and petition clauses), Fourth (unreasonable seizure), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 275.)

**Count Four (First Amendment retaliation against Shaw, Adu and Huffman).** In Count Four, Plaintiff sues Defendants Shaw, Adu and Huffman for creating a false conduct report that led to him being in TPU for ten days and was intended to retaliate against Plaintiff for exercising his right to threaten to file a federal lawsuit. Although the claim's description cites several Amendments, its title is "First Amendment Retaliation." The undersigned will therefore construe this claim as asserting only First Amendment retaliation claims against these Defendants.[4] (Doc. No. 10 at PageID 275-76.)

---

[4] The Court notes that Fourteenth Amendment substantive due process claims that are based upon allegedly retaliatory conduct are considered to be duplicative of First Amendment retaliation claims. *See Griffith v. Girdler*, No. CIV.A. 6:07-442-DCR, 2009 WL 961200, at *3 (E.D. Ky. Apr. 8, 2009) (collecting cases).

**Count Five (unnecessary/unreasonable strip searches against Shaw, Adu and Huffman).** In Count Five, Plaintiff sues Defendants Shaw, Adu and Huffman for causing him to be subjected to "unnecessary and unreasonable invasive strip searches" in violation of the Fourth (unreasonable search), Eighth (excessive force, cruel and unusual punishment) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 276.)

**Count Six (failure to provide notice against Defendant McCoy).** In Count Six, Plaintiff alleges that Defendant McCoy failed to provide him a copy of the Adu Report in violation of Ohio Administrative Code Section 5120-9-07(E) and the Sixth ("notice clause") and Fourteenth (substantive due process, procedural due process) Amendments. (Doc. No. 10, PageID 276-77.)

**Count Seven (failure to record disciplinary proceeding against Defendants Moler and Jordan).** In Count Seven, Plaintiff alleges that Defendants Moler and Jordan failed to record the disciplinary proceeding in violation of Ohio Administrative Code Section 5120-9-08(D) and the Fourteenth Amendment (procedural due process). (Doc. No. 10, PageID 277.)

**Count Eight (malicious prosecution against Defendants Shaw, Adu and Huffman).** In Count Eight, Plaintiff sues Defendants Shaw, Adu and Huffman for malicious prosecution in violation of the First (speech and petition clauses), Fourth (unreasonable seizure), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process, procedural due process) Amendments. (Doc. No. 10 at PageID 277.)

**Count Nine (facial challenge to Prison Rules 5.7 and 26).** In Count Nine, Plaintiff asserts that both Prison Rule 26, which penalizes disrespect towards other persons, and Prison Rule 5.7, which penalizes disrespectful comments made in an informal complaint or grievance, are facially unconstitutional in violation of the First Amendment (speech and petition clauses). (Doc. No. 10 at PageID 277.) Plaintiff does not identify a Defendant for this claim. Due to the nature of the relief requested, the undersigned construes it as being asserted against Defendant Chambers-Smith in her official capacity.

**Count Ten (as-applied challenge to Prison Rule 26 (disrespect)).** In Count Ten, Plaintiff asserts that Prison Rule 26, which penalizes disrespect towards other persons, is unconstitutional as applied to him in violation of the First (speech and petition clauses) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 277-78.) Plaintiff does not identify a Defendant for this claim. Due to the nature of the relief requested, the undersigned construes it as being asserted against Defendant Chambers-Smith in her official capacity.

**Count Eleven (facial challenge to OAC 5120-9-31(F) (disrespect)).** In Count Eleven, Plaintiff asserts Ohio Administrative Code Section 5120-9-31(F), which penalize disrespectful comments made in an informal complaint or grievance, is facially unconstitutional in violation of the First Amendment (speech and petition clauses). (Doc. No. 10 at PageID 277-78.) Plaintiff does not identify a Defendant for this claim. Due to the nature of the relief requested, the undersigned construes it as being asserted against Defendant Chambers-Smith in her official capacity.

13

**Count Twelve ("expungement and reversal").** In Count Twelve, Plaintiff demands expungement of his institutional record and reversal of both his increased security level and the outcome of the disciplinary proceeding. (Doc. No. 10 at PageID 278.) Plaintiff does not identify a Defendant for this claim. Due to the nature of the relief requested, the undersigned construes it as being asserted against Defendant Chambers-Smith in her official capacity.

In addition to his demands for injunctive relief in Counts Nine through Twelve, Plaintiff demands one million dollars in compensatory and punitive damages. (Doc. No. 10 at PageID 274 & 277-78.)

## IV.  LAW AND ANALYSIS

Plaintiff brings his constitutional claims pursuant to 42 U.S.C. § 1983, which authorizes a cause of action "against any person who, under color of state law, 'subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a cause of action under Section 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).

For the reasons set forth below, the undersigned **RECOMMENDS** that all claims asserted in Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

14

**A.      All Official Capacity Claims for Damages Should Be Dismissed with Prejudice.**

Plaintiff has sued Defendants Chambers-Smith, Shaw, Adu, Huffman, McCoy, Molder and Jordan in their official capacities. (Doc. 10 at PageID 259.) The Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages. Therefore, Plaintiff's official capacity claims should be dismissed with prejudice to the extent that they seek to recover damages.

Absent an express waiver, states are immune from lawsuits seeking damages under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). Therefore, if Plaintiff had sued the State of Ohio, his claims would be barred by the Eleventh Amendment.

Plaintiff cannot avoid this result by suing officials and employees of the State of Ohio. The Eleventh Amendment bar extends to actions where the State is not named as a defendant, but the actions essentially seek to recovery of money from the State. *Edelman*, 415 U.S. at 663.  It is well-established that a claim against an individual defendant in his official capacity is actually a claim against the entity that employs him. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which an officer is an agent …. [A]n official-capacity suit is, in all respects other than name, to be treated as a suit

15

against the entity.") (internal quotations and citations omitted). Therefore, actions against State officials in their official capacities for money damages are barred by the Eleventh Amendment. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)). This doctrine applies squarely here.

In sum, the Eleventh Amendment to the United States Constitution bars Plaintiff from suing Defendants in their official capacities to recover damages. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's official capacity claims be **DISMISSED WITH PREJUDICE** to the extent that they seek to recover damages.

## B. Plaintiff's Claims Against Defendants Shaw, Huffman and Adu Should Be Dismissed with Prejudice.

For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's claims against Defendants Shaw, Huffman and Adu in Counts One, Two, Three, Four, Five and Eight of the Amended Complaint be **DISMISSED WITH PREJUDICE**.

### 1. Count One (supervisory liability against Shaw)

In Count One, Plaintiff asserts that Defendant Shaw orchestrated a conspiracy to file a false conduct report in retaliation for Plaintiff's threat to file a lawsuit. (Doc. No. 10 at PageID 274-75.) The undersigned construes this claim as seeking to hold Defendant Shaw liable for damages under a theory of supervisory liability.

To hold a supervisor liable under Section 1983, Plaintiff must allege that the supervisor was "somehow personally involved in the unconstitutional activity of a subordinate … or at least acquiesced in the alleged unconstitutional activity of a

subordinate." *Wingo v. Tenn. Dept. of Corr.*, (citing *Dunn v. State of Tenn.*, 697 F.2d 121, 128 (6th Cir. 1982) and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). *Accord Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) ("plaintiff must show that [the supervisor] at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). Plaintiff must also plead and prove that there is a "causal connection" between the allegedly unconstitutional active behavior and Plaintiff's injuries. *Crawford*, 15 F.4th at 761-62.

For the reasons set forth below in the analysis of Count Three, the undersigned concludes that Plaintiff has failed to state (and cannot state) a claim that Defendants Shaw, Huffman and Adu engaged in unconstitutional or unlawful conduct by conspiring to file a false conduct report. Absent underlying unconstitutional or unlawful conduct, Defendant Shaw cannot be held liable under a theory of supervisory liability.

Therefore, the undersigned **RECOMMENDS** that Count One (supervisory liability against Shaw) be **DISMISSED WITH PREJUDICE**.

### 2.    Count Two (unnecessary/unreasonable handcuffing against Shaw and Huffman)

In Count Two, Plaintiff sues Defendants Shaw and Huffman for handcuffing him without justification, in violation of the First (free speech and petition clauses), Fourth (unreasonable seizure), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 275.) As explained below, the undersigned **RECOMMENDS** that all claims in Count Two be **DISMISSED WITH PREJUDICE**.

### a. Handcuffing: First Amendment retaliation (free speech and petition clauses)

Plaintiff claims that Defendants Shaw and Huffman handcuffed him to retaliate against him because of his speech. The First Amendment prohibits government officials "from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotations and citation omitted). To proceed on a First Amendment retaliation claim, a plaintiff must plead that:

> (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there was a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Because Plaintiff's allegations do not satisfy the second element of this test—that is, the alleged facts do not show that the handcuffing constituted an adverse action—the undersigned recommends that Plaintiff's First Amendment retaliation claim be dismissed without prejudice.

It is well-established that what constitutes an adverse action "is not static across contexts." *Thaddeus-X*, 175 F.3d at 398. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action . . . is considered adverse." *Id*. Furthermore, certain actions may be "so de minimis that they do not rise to the level of being constitutional violations." *Id*.

Both legal principles apply here. Handcuffing Plaintiff while he was transported to and remained in Shaw's office was a routine and unexceptional act in a correctional facility. *See Daniel v. Heise*, No. C15-1247, 2016 U.S. Dist. LEXIS 95549, *25 (W.D.

Wa. May 9, 2016) ("Handcuffing an inmate for escort within a correctional facility certainly advances the legitimate penological interest of safety and security within the facility, and minor contact incidental to that handcuffing procedure is insufficient to implicate federal constitutional concerns."). Similarly, handcuffing Plaintiff was a de minimis act that does not rise to the level of a constitutional violation. *See Washington v. Superintendent Salamon*, No. 4:21-cv-1746, 2022 U.S. Dist. LEXIS 161637, *12 (M.D. Pa. Sept. 7, 2022) ("[A]ttempting to handcuff a prisoner—a normal occurrence for an inmate incarcerated in a state correctional institution—prior to a Zoom visitation simply does not rise to the level of a 'more than de minimis' adverse event.") (citation omitted).

Accordingly, because Plaintiff has not alleged—and cannot allege—that being handcuffed under the circumstances described in the Complaint was an adverse action, the undersigned **RECOMMENDS** that the First Amendment retaliation claims in Count Two be **DISMISSED WITH PREJUDICE**.

### b. Handcuffing: Fourth Amendment (unreasonable seizure)

Plaintiff claims that when Defendants Shaw and Huffman handcuffed him, they unreasonably seized him in violation of the Fourth Amendment. While prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, ... chief among which is internal security." *Hudson v. Palmer*, 468 U.S. 517, 523-24 (1984) (citation omitted). Therefore, "measures implemented including handcuffing the plaintiff" do not violate the Constitution if they are "reasonably related to legitimate penological objectives of the defendants to provide for institutional safety and

security." *Clark v. Story*, No. 85-5721, 1985 U.S. App. LEXIS 13885, *3 (6th Cir. Nov. 11, 1985) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979) and *Pell v. Procunier*, 417 U.S. 817 (1974)); *accord Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) ("[T]he Fourth Amendment protects prisoners from searches and seizures that go beyond legitimate penological interests.") (internal citations and quotations omitted).

The Court must determine, therefore, whether Plaintiff has plausibly alleged that handcuffing him was ***not*** reasonably related to the legitimate penological objectives of institutional safety and security. Plaintiff alleges that he was handcuffed while being transported to and from, and remaining in, Shaw's office. Plaintiff also alleges that he argued with and spoke over Shaw during their interaction. Based upon these allegations, Plaintiff has not stated—and cannot state—a plausible claim that handcuffing him was not reasonably related to legitimate penological objectives. Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Fourth Amendment claims in Count Two be **DISMISSED WITH PREJUDICE**.

### c. Handcuffing: Eighth Amendment (cruel and unusual punishment)

The Eighth Amendment prohibition on cruel and unusual punishment protects inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). But corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (internal quotations and citation omitted). Moreover, an

Eighth Amendment claim cannot be based upon a *de minimus* use of physical force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010); *see also Carlton v. Turner*, No. 05-1009, 2006 WL 955886, at *2 (6th Cir. Apr. 12, 2006) (not "every malevolent touch by a prison guard gives rise to a federal cause of action").

Plaintiff has not alleged that he suffered physical discomfort or injury as a result of being handcuffed.[5] Plaintiff therefore has not stated—and cannot state—plausible Eighth Amendment claims. Accordingly, the undersigned **RECOMMENDS** that these claims in Count Two be **DISMISSED WITH PREJUDICE**.

### d. Handcuffing: Fourteenth Amendment (substantive due process)

Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). This legal principle "specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted). Substantive due process claims must include a "careful description" of the asserted fundamental liberty interest. *Id.* at 721.

Plaintiff cannot state substantive due process claims based upon his allegations of being handcuffed, because he does not have a fundamental liberty interest in not being

---

[5] The Eighth Amendment does not give rise to a cause of action where a prisoner alleges only mental or emotional injury. *Harden-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008).

handcuffed. It is well-established that prison officials have wide latitude to restrain prisoners in the interest of maintaining security, order, and discipline in the prison setting. *See Fisher v. McGinnis*, 121 F.3d 708 (6th Cir. 1997) (recognizing the legitimate penological interest in maintaining security and order); *see also Pollock v. Marshall,* 845 F.2d 656, 658-60 (6th Cir.), *cert. denied,* 498 U.S. 897 (1988)). Therefore, the undersigned **RECOMMENDS** that Plaintiff's Fourteenth Amendment substantive due process claims in Count Two be **DISMISSED WITH PREJUDICE**.

> **3.     Count Three (civil conspiracy against Shaw, Huffman and Adu)**

In Count Three, Plaintiff sues Defendants Shaw, Adu, and Huffman for conspiring to manufacture a false conduct report in retaliation for Plaintiff's threat to file a federal lawsuit. (Doc. 10 at PageID 275.)

To state a claim of civil conspiracy in violation of Section 1983, a plaintiff must plead that there is "an agreement between two or more persons to injure another by ***unlawful*** action." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (emphasis added) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). Here, Plaintiff has not identified an unlawful action because "a prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003), *quoted in Wood v. Williamson*, No. 2:24-cv-4096, 2024 U.S. Dist. LEXIS 230701, at *5 (S.D. Ohio Dec. 20, 2024) (Vascura, M.J.); *see also Jones v. McKinney*, No. 97-6424, 1998 WL 940242, *1 (6th Cir. Dec. 23, 1998) (district court properly dismissed a complaint alleging that prison officials "deliberately issued a false disciplinary report" against the plaintiff as frivolous because "even if the disciplinary report was false, ... a

prisoner has no constitutionally protected immunity from being wrongly accused"); *Lee v. Pauldine*, No. 1:12-cv-077, 2013 WL 65111, *8 (S.D. Ohio Jan. 4, 2013) ("Accepting as true plaintiff's allegation that defendant ... filed a false conduct report against him, '[t]he act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.'" (citation omitted)).

Because there is no constitutional protection against false accusations, conspiracy claims based on such allegations must fail. The undersigned therefore **RECOMMENDS** that Count Three (civil conspiracy against Shaw, Huffman and Adu) be **DISMISSED WITH PREJUDICE**.

### 4. Count Four (First Amendment retaliation against Shaw, Huffman and Adu)

In Count Four, Plaintiff sues Defendants Shaw, Adu and Huffman for creating a false conduct report intended to retaliate against him for exercising his right to threaten to file a federal lawsuit and led to his ten-day confinement in TPU. (Doc. No. 10 at PageID 275-76.)

As noted above, the first element of a First Amendment retaliation claim requires Plaintiff to have engaged in protected conduct. *Thaddeus-X*, 175 F.3d at 394. Plaintiff asserts that he has a constitutional right to threaten to file a lawsuit. But a prisoner's threat to file a grievance or lawsuit will only constitute protected speech if the threatened grievance or lawsuit involves one or more legitimate and non-frivolous claims. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Therefore, it is necessary to examine the legitimacy of the threatened claims

when deciding whether Plaintiff's threat to file a lawsuit constitutes protected conduct under the First Amendment.[6]

Plaintiff alleges that he informed Shaw of his "intent to exercise [his] First Amendment rights" when he made the following threat:

> I'm already going to file a federal lawsuit [for a false conduct report in retaliation] and inform Annette Chambers-Smith, the Correctional Institutional Inspection Committee and the Ohio Inspector General about the abusive misconduct being perpetrated here.

(Doc. No. 10 at PageID 264.) Significantly, Plaintiff made this threat **before** Shaw, Adu and Huffman allegedly authored false written conduct reports. At the time of this threat, therefore, the only "false conduct report" that existed was Adu's verbal statement to Shaw that Plaintiff had failed to perform his job duties. (*Id.* at PageID 260-64.) Plaintiff alleges that Adu's verbal report was false because no one had informed him that he had any job duties. (*Id.*) He also speculates that Sergeant King deliberately failed to inform him about his job duties to retaliate against Plaintiff for an informal complaint. (*Id.*)

The question is whether potential legal claims based solely on these allegations would be legitimate and non-frivolous. Plaintiff might have asserted three claims based upon Adu's verbal statement to Shaw. First, Plaintiff might have claimed—as he has in

---

[6] For example, when a prisoner threatened to file a lawsuit against a prison official who took his television set, the court found that the threat to sue was based on a facially legitimate unconstitutional taking claim and therefore was arguably protected conduct. *Washington v. Michigan Dep't of Corr.*, No. 2:17-CV-6, 2017 WL 2115538, at *4 (W.D. Mich. May 16, 2017). Conversely, when a prisoner threatened to file a grievance against a prison guard who was eating at his desk in violation of prison policy, the Sixth Circuit found that the threatened grievance was frivolous and did not constitute protected conduct because the guard's actions did not affect the prisoner. *Thaddeus-X v. Love*, No. 98-2211, 2000 U.S. App. LEXIS 11813, *8 (6th Cir. May 22, 2000).

this lawsuit—that a false conduct report, standing alone, violated his constitutional rights. Such a claim would fail as a matter of law because, as explained above, prisoners do not have a constitutional right to be protected from false accusations or conduct reports.

Second, Plaintiff might have asserted a First Amendment retaliation claim based on non-defendant King's alleged failure to inform Plaintiff of his job duties. Such a claim would fail as a matter of law because a failure to act is generally not considered to be an adverse action. *Monn v. Gettysburg Area Sch. Dist.*, No. 1:12-cv-2085, 2013 U.S. Dist. LEXIS 47371, *11-12 (M.D. Pa. Apr. 2, 2013) (citing cases). It would also fail because King's alleged failure to inform Plaintiff about his job duties would not have deterred (and in fact did not deter) Plaintiff from exercising his First Amendment rights. *See Houston Community College Sys. v. Wilson*, 595 U.S. 468 (2022) (no First Amendment retaliation claim where the adverse action (censure) could not have "materially inhibited Mr. Wilson's ability to speak freely").

Third, Plaintiff might have asserted a First Amendment retaliation claim based on Adu's allegedly false verbal conduct report. Such a claim would fail because the retaliatory motive was not the "but-for" cause of the adverse action. In other words, since Plaintiff alleges that it was non-defendant King who had the retaliatory motive, but Adu who took the challenged action, he could not establish the required causal connection. *See Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

In sum, Plaintiff's threat to file a lawsuit was not protected conduct for purposes of Plaintiff's First Amendment retaliation claim in this lawsuit. Therefore, the

undersigned **RECOMMENDS** that Count Four (First Amendment retaliation against Shaw, Huffman and Adu) be **DISMISSED WITH PREJUDICE**.

> **5.** **Count Five (unreasonable strip searches against Shaw, Huffman and Adu)**

In Count Five, Plaintiff sues Defendants Shaw, Adu and Huffman for taking actions (namely, conspiring to manufacture false conduct reports) that caused him to be subjected to "unnecessary and unreasonable invasive strip searches" in violation of the Fourth (unreasonable search), Eighth (excessive force, cruel and unusual punishment) and Fourteenth (substantive due process) Amendments. (Doc. No. 10 at PageID 276.)

Significantly, Plaintiff does not allege that Shaw, Adu or Huffman were personally involved in the challenged strip searches. Instead, he alleges that their actions caused him to be transferred to TPU, which is a process that required him to be strip searched. But to be held liable under Section 1983, a defendant must be personally involved in the alleged deprivation of a constitutional right. *See, e.g., Pineda v. Hamilton Cty.*, 977 F.3d 483, 491 (6th Cir. 2020) ("Section 1983 imposes liability only on a defendant who was personally involved in the unconstitutional action that caused the plaintiff's injury.")

This claim fails because there is no plausible claim that these Defendants were personally involved in an allegedly unconstitutional action. As explained above, even if Shaw, Adu and Huffman had made false accusations against Plaintiffs, such acts would not have violated his constitutional rights. Separately, Plaintiff has alleged no facts that support a plausible claim that the strip searches were conducted in an unconstitutional manner. And even though Plaintiff complains that it was unnecessary to strip search him

a second time, he does not allege that the decision to conduct a second strip search was made by Defendants Shaw, Huffman or Adu. Accordingly, the undersigned **RECOMMENDS** that Count Five be **DISMISSED WITH PREJUDICE**.

### 6.    Count Eight (malicious prosecution against Shaw, Huffman and Adu)

In Count Eight, Plaintiff sues Defendants Shaw, Huffman and Adu for malicious prosecution in violation of the First (speech and petition clauses), Fourth (unreasonable seizure), Eighth (cruel and unusual punishment) and Fourteenth (substantive due process, procedural due process) Amendments. (Doc. No. 10 at PageID 277.) He alleges that these Defendants "conspired to produce deliberately false and materially misleading conduct reports … which they knew the RIB would rely upon totally to find me guilty." (*Id.*)

> To plead a claim for malicious prosecution, Plaintiff must satisfy four elements:
>
> First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute. Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. Third, the plaintiff must show that, as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty, as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. Fourth, the criminal proceeding must have been resolved in the plaintiff's favor.

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (cleaned up). With respect to the fourth element, Plaintiff need only show that the challenged criminal prosecution ended without a conviction; an affirmative indication of innocence is not required. *Thompson v. Clark*, 142 S. Ct. 1332 (2022).

Assuming *arguendo* that Plaintiff can assert a malicious prosecution claim in the context of prison disciplinary proceedings, his claims fail because the disciplinary proceeding was not "resolved in [his] favor," as required by the fourth element of the *Sykes* test. 625 F.3d at 309. *See Wood v. Williamson*, No. 25-3096, 2025 U.S. App. LEXIS 16159, at *6 (6th Cir. June 30, 2025) (affirming dismissal of Plaintiff's malicious prosecution claim in that case and reasoning that "[e]ven if we assume that a prison disciplinary proceeding constitutes a 'criminal prosecution,' ... the disciplinary proceeding here was not resolved in Wood's favor"). Accordingly, the undersigned **RECOMMENDS** that Count Eight be **DISMISSED WITH PREJUDICE**.

### C. Plaintiff's Claims Against Defendants McCoy, Moler and Jordan (Counts Six and Seven) Should Be Dismissed with Prejudice.

Plaintiff challenges two aspects of the disciplinary proceedings that resulted in his ten-day confinement in TPU. In Count Six, Plaintiff alleges that Defendant McCoy failed to provide him a copy of the Adu Report in violation of Ohio Administrative Code Section 5120-9-07(E) and the Sixth ("notice clause") and Fourteenth (substantive due process, procedural due process) Amendments. (Doc. No. 10, PageID 276-77.) And in Count Seven, Plaintiff alleges that Defendants Moler and Jordan failed to record the disciplinary proceeding in violation of Ohio Administrative Code Section 5120-9-08(D) and the Fourteenth Amendment (procedural due process). (Doc. No. 10, PageID 277.)

Plaintiff's claims that the disciplinary proceeding violated Ohio law should be dismissed. As this Court has previously held, "prisoners do not have a federal statutory or constitutional right to enforce prison officials' compliance with prison policies." *Lumbus*

*v. Weisbar*, No. 1:23-CV-196, 2024 WL 1756915, at *11 (S.D. Ohio Apr. 24, 2024)

(citing *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)).

Plaintiff's claims that the disciplinary proceeding violated his Fourteenth

Amendment right to due process fare no better. "Prison disciplinary proceedings are not

part of a criminal prosecution, and the full panoply of rights due a defendant in such

proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). After

explaining why prison officials must have considerable discretion when fashioning

procedures utilized in disciplinary hearings, the United States Supreme Court concluded:

> [T]here would be great unwisdom in encasing the disciplinary procedures
> in an unflexible constitutional straitjacket that would necessarily call for
> adversary proceedings typical of the criminal trial, very likely raise the
> level of confrontation between staff and inmate, and make more difficult
> the utilization of the disciplinary process as a tool to advance the
> rehabilitative goals of the institution. This consideration, along with the
> necessity to maintain an acceptable level of personal security in the
> institution, must be taken into account as we now examine in more detail
> the Nebraska procedures that the Court of Appeals found wanting.

*Id*. at 563.

As discussed below, subsequent cases have clarified that when determining

whether the Due Process Clause applies, reviewing courts should examine the nature of

the interest that was allegedly harmed by prison disciplinary proceedings. Here, Plaintiff

contends that as a result of the allegedly unconstitutional disciplinary proceeding, he was

placed in restrictive housing (TPU) for ten days and "deprived of liberty, property and

privileges enjoyed while in general population." (Doc. No. 10, PageID 270.)

Plaintiff's claim that it was unconstitutional to place him in restrictive housing

fails. The Supreme Court has addressed this issue and held that "the Due Process Clause

does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (*citing Meachum v. Fano*, 427 U.S. 215 (1976)). More specifically, "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486. Therefore, Plaintiff cannot assert a due process challenge based upon his placement in restrictive housing.

Although Plaintiff does not identify the property and privileges that he was deprived of by virtue of being placed in restrictive housing, claims based upon these types of deprivations also fail. Prisoners who are confined to restrictive housing do not have constitutionally protected interests in avoiding a raised security level, *Sandin*, 515 U.S. at 484; temporary restriction of mail, telephone, visitation, commissary, and personal-possession privileges, *Kennedy v. Blankenship*, 100 F.3d 640, 642-43, n.2 (8th Cir. 1996); or deprivation of the right to earn or accrue good time credits, *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992).

In sum, because Plaintiff has not alleged that the sanctions that were imposed as a result of the disciplinary proceeding "inevitably affect[ed] the duration of his sentence" (*see Sandin*, 515 U.S. at 487) or impacted any other constitutionally protected interest, he is not entitled to challenge the procedures used during the disciplinary proceeding under the Due Process Clause. And the Sixth Amendment applies only to criminal prosecutions, not to prison disciplinary proceedings. *See Thornton v. Bonneville*, No. 2:06CV224, 2007 WL 80883, at *1 (W.D. Mich. Jan. 8, 2007) (finding that the Sixth Amendment did not require an official holding a prison disciplinary hearing to obtain or review a copy of a

30

disciplinary report in order to find a prisoner guilty) (citing *Baxter v. Palmigiano*, 425 U.S. 308 (1976); *McDonnell*, 418 U.S. at 556).

Therefore, this Court **RECOMMENDS** that Plaintiff's claims in Counts Six and Seven that challenge the procedures used in connection with the disciplinary proceeding be **DISMISSED WITH PREJUDICE**.

> **D.    Plaintiff's Claims Against Defendant Chambers-Smith in her Official Capacity Should Be Dismissed with Prejudice.**

Plaintiff's claims in Counts Nine, Ten and Eleven are readily addressed because they are identical to claims that this Court has already dismissed in another case.

In the complaint that he filed in *Wood v. Williamson*, S.D. Ohio Case No. 2:24-cv-4096, Plaintiff Michael Wood included claims based upon facial challenges to OAC 5120-9-31(F), Prison Rule 5.7 and Prison Rule 26 (*see* Complaint against Williamson, Count Three, Doc. No. 1, PageID 20) and an as-applied challenge to Prison Rule 26 (*id.*, Count Four).[7] ***This Court dismissed these claims and the Sixth Circuit affirmed.*** *See Wood v. Williamson*, Case No. 2:24-cv-4096, 2024 U.S. Dist. LEXIS 230701, at *7-8 (S.D. Ohio Dec. 20, 2024) (Vascura, M.J.), *report and recommendation adopted by* 2025 U.S. Dist. LEXIS 7884, at *5-7 (S.D. Ohio Jan. 15, 2025) (Sargus, D.J.), *aff'd* No. 25-3096, 2025 U.S. App. LEXIS 16159, at *6-8 (6th Cir. June 30, 2025).

Accordingly, the undersigned **RECOMMENDS** that Counts Nine, Ten and Eleven be **DISMISSED WITH PREJUDICE**.

---

[7] As noted above, OAC 5120-9-31(F) and Prison Rule 5.7 penalize disrespectful comments made in an informal complaint or grievance, and Prison Rule 26 penalizes disrespect towards other persons.

Finally, in Count Twelve, Plaintiff demands expungement of his institutional record and reversal of his increased security level and the outcome of the disciplinary proceeding. (Doc. No. 10 at PageID 278.) However, "[b]ecause Wood has not pleaded sufficient facts to state a claim," this Court "need not address whether his disciplinary record should be vacated or expunged." *Wood v. Williamson*, No. 25-3096, 2025 U.S. App. LEXIS 16159, at *8-9 (6th Cir. June 30, 2025).

## V.      CONCLUSION

Having conducted the initial screen required by law, it is **RECOMMENDED** that all claims against all Defendants should be **DISMISSED WITH PREJUDICE.**

The Court further **RECOMMENDS** that the District Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith, and consequently, leave for Plaintiff to appeal *in forma pauperis* should be denied.

**IT IS SO RECOMMENDED.**


          */s/ Caroline H. Gentry*
Caroline H. Gentry
UNITED STATES MAGISTRATE JUDGE


## <u>Procedure on Objections to Report and Recommendation</u>

If any party objects to this Report and Recommendation, that party may, **<u>within fourteen (14) days</u>** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is

made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).